*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0374P (6th Cir.)
File Name: 02a0374p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____


UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

JOSEPH JESUS LOPEZ
(00-3073); MARTIN SOUZA
(99-4396),
    *Defendants-Appellants.*

Nos. 99-4396;
00-3073


Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 98-00356—James S. Gwin, District Judge.

Argued: January 31, 2002

Decided and Filed: October 29, 2002

Before: SUHRHEINRICH, SILER, and BATCHELDER,
Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Richard A. Cline, MITCHELL, ALLEN, CATALANO & BODA, Columbus, Ohio, Robert A. Ratliff, ROBERTS, SHIELDS, GREEN, LANDRY, & RATLIFF,

Mobile, Alabama, for Appellants.    Blas E. Serrano, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.  **ON BRIEF:**    Richard A. Cline, MITCHELL, ALLEN, CATALANO & BODA, Columbus, Ohio, Robert A. Ratliff, ROBERTS, SHIELDS, GREEN, LANDRY, & RATLIFF, Mobile, Alabama, for Appellants. Blas E. Serrano, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

————————————

**OPINION**

————————————

SILER, Circuit Judge.  Defendants Joseph Jesus Lopez and Martin Souza appeal their convictions and sentences arising out of a conspiracy to distribute cocaine.  Both Lopez and Souza assert that their sentences violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the quantity of cocaine involved in the conspiracy was neither alleged in the indictment nor submitted to the jury.  In addition, Lopez appeals the district court's denial of his motion to sever and its determination of the amount of cocaine attributable to him. As set forth below, we AFFIRM the convictions and sentences for both Lopez and Sousa.

**BACKGROUND**

In 1998, Lopez and Souza were indicted on federal drug charges.  Count 1 charged both Lopez and Souza with conspiring to distribute cocaine and to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846.  Count 2 charged Lopez with distributing approximately ten kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1).

During the trial, Roger Williams, an inmate at the Summit County Jail, testified that Souza talked about the charges pending against him while they were in jail together.  Souza told Williams that he was charged with transporting 140 to 160 kilograms of cocaine from Los Angeles to Cleveland. Souza said that 140 to 160 was "the right ballpark figure" but

of cocaine. Duran Banner testified that he received a total of at least thirty kilograms from Lopez. Further testimony established that in October 1997, Laster received ten kilograms of cocaine from Lopez, which he turned over to government agents. Based on this testimony, the district court's factual findings attributing in excess of 150 kilograms of cocaine to Lopez were not clearly erroneous.

**AFFIRMED.**

claimed that he "was just handling the money" and "didn't know how they could indict him on that."

The jury returned verdicts finding both defendants guilty of the conspiracy count and Lopez guilty of the distribution count. It made no findings as to the quantity of cocaine involved in either charge.

At sentencing, the district court found by a preponderance of the evidence that an amount in excess of 150 kilograms of cocaine was attributable to each defendant. With a total offense level of 42 and a criminal history category of II, Lopez's guidelines range was 360 months to life imprisonment. The district court sentenced him to 360 months' imprisonment on Counts 1 and 2 to be served concurrently. Due to the amount of cocaine involved and his two prior felony drug convictions, Souza was sentenced to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A).

### DISCUSSION

#### A.  *Apprendi* Challenges

Both Lopez and Souza assert that because the quantity of cocaine involved in the cocaine conspiracy was neither alleged in the indictment nor submitted to the jury, their sentences must be vacated pursuant to *Apprendi*.[1] In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

---

[1] Count 2 alleged that Lopez distributed approximately ten kilograms of cocaine; however, the district court instructed the jury that the evidence "need not establish that the amount or quantity of cocaine was as alleged in" Count 2. Count 1 did not allege a specific amount of cocaine.

The government contends that defendants' *Apprendi* challenges must be reviewed for plain error because they did not request an instruction requiring the jury to determine whether the offense involved a specific or threshold quantity of drugs. Although Lopez and Souza did not request such an instruction, they filed written objections to the drug quantity recommended by their presentence investigation reports and made oral objections to the drug quantity determination at their sentencing hearings. We formerly held that a defendant adequately preserved his *Apprendi* challenge by objecting to the drug quantity determination. *See United States v. Strayhorn*, 250 F.3d 462, 467 (6th Cir. 2001) ("[W]e believe the record makes plain that Strayhorn preserved his challenge by repeatedly objecting to the drug quantity determination at his plea hearing and at his sentencing hearing, as well as in a written objection to the calculation of his base offense level in his presentence report. Although he did not utter the words 'due process' at either of these hearings, he made it well known that he disputed the district court's factual finding with respect to drug quantity."); *see also United States v. Humphrey*, 287 F.3d 422, 445 (6th Cir. 2002) ("The preservation of a constitutional objection should not rest on magic words; it suffices that the district court be apprised of the objection and offered an opportunity to correct it.").

Since the time this case was argued, two significant decisions, *United States v. Cotton,* 122 S. Ct. 1781 (2002), and *United States v. Stewart*, 2002 WL 31010856 (6th Cir. Sept. 10, 2002), have explained the law as applied to these defendants. In *Stewart*, we held that an *Apprendi* challenge will be reviewed for plain error where, although the defendants objected in the district court to the quantity of drugs attributed to them for sentencing, they failed to raise in the district court objections based on *Apprendi* or *Jones v. United States*, 526 U.S. 227 (1999). We distinguished the situation in *Stewar*t from *Strayhorn* on the grounds that neither *Jones* nor *Apprendi* had been decided when the *Strayhorn* defendants were tried and sentenced. On the other hand, the S*tewart* defendants were sentenced after *Jones* was decided but before *Apprendi* was decided. We held that those

to represent himself. Lopez asserts that in Souza's cross-examination of witnesses, Souza attempted to testify as to his innocence and the wrongs perpetrated against him by government agents. Souza's questioning was frequently interrupted by objections from the government, disrupting the flow of the trial. During Lopez's cross-examination of Victoria Webster, Souza interrupted to request headache medication. Although Souza's self-representation may have disrupted the flow of the proceedings, Lopez fails to show how Souza's self-representation specifically affected him. Accordingly, he has not demonstrated plain error.

## C.  Drug Quantity

Lopez contends that the district court erred in attributing in excess of 150 kilograms of cocaine to him, asserting that the correct amount of cocaine reliably attributable to him was 145.5 kilograms. We review for clear error the district court's findings of fact regarding the amount of cocaine for which a defendant is to be held accountable. *United States v. Walton,* 908 F.2d 1289, 1300-01 (6th Cir. 1990). The district court's findings must be supported by a preponderance of the evidence. *United States v. Baro*, 15 F.3d 563, 569 (6th Cir. 1994). Where the amount is uncertain, the district court is to "err on the side of caution" and only hold the defendant responsible for that quantity of drugs for which "the defendant is more likely than not *actually* responsible." *Walton,* 908 F.2d at 1302.

The testimony at trial established that Lopez began to supply cocaine to Donald Laster in November 1996. On the first two occasions, Laster received five kilograms of cocaine. Thereafter, Laster received ten-kilogram shipments of cocaine from Lopez. Robert Marshall testified that he made between ten and twelve  trips to transport cocaine from Lopez to Laster, and Victoria Webster testified that she made between ten and twenty trips. A conservative count of the cocaine transported by Marshall and Webster is 200 kilograms. In addition, Mark Jefferson testified that he traveled with Lopez from Chicago to Cincinnati and Columbus with ten kilograms

a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "The fact that a defendant may have a better chance at acquittal if his trial were severed does not require the judge to grant his motion: the defendant must show 'substantial,' 'undue,' or 'compelling' prejudice." *United States v. DeFranco*, 30 F.3d 664, 669-70 (6th Cir. 1994).

Lopez argues that he was prejudiced by the admission of Roger Williams's testimony, which would not have been admissible against Lopez in a separate trial. Williams testified that he spent time in jail with Souza and that Souza told him about his involvement in the cocaine conspiracy. Lopez argues that other than the testimony of government agents, Williams's testimony was the only direct testimony as to the guilt of either defendant that did not come from some other member of the alleged conspiracy seeking to minimize his or her culpability or sentence. Lopez asserts that Williams's testimony was highly damaging to Souza's case and had a spillover effect on Lopez's case, implying Lopez's guilt by association.

Williams did not mention Lopez's name or his involvement in the conspiracy. *See United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir. 1985) ("Merely because inflammatory evidence is admitted against one defendant, not directly involving another codefendant . . . does not, in and of itself, show substantial prejudice in the latter's trial."). Furthermore, a spillover of evidence from one case to another generally does not require severance. *Anderson*, 89 F.3d at 1312. Lopez fails to demonstrate "substantial," "undue," or "compelling" prejudice due to the admission of Williams's testimony.

In addition, Lopez argues that he was prejudiced because Souza represented himself at trial. According to Lopez, the district court was aware of Souza's mental condition, having ordered a psychiatric evaluation of Souza, yet allowed Souza

*Stewart* defendants who had submitted written objections to the quantities of drugs attributed to them for sentencing, but had not challenged the constitutionality of the district court's finding the quantity of drugs by a preponderance of the evidence, had forfeited the right to a constitutional challenge based on *Jones* or *Apprendi*. *See Stewart*, 2002 WL 31010856, at ** 7, 11. Similarly, the defendants in this case were sentenced after the decision in *Jones* but before the decision in *Apprendi*. Therefore, we review under the plain error standard.

Assuming that the error under *Apprendi* was plain, the court must then determine whether the error effected substantial rights. *Cotton*, 122 S. Ct. at 1786. Moreover, if the error did affect substantial rights, if it "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings," then it does not call for a reversal of the sentence. *Id.*

Like the defendants in *Stewart*, Lopez and Sousa objected to the specific quantities of drugs but did not raise any constitutional arguments. Therefore, their *Apprendi* claims were forfeited. In the case of *Lopez*, the error did not affect his substantial rights, because he could have received a sentence of 360 months based upon consecutive terms, as explained hereafter.

### 1. Lopez

Based in part on its finding that Lopez was responsible for in excess of 150 kilograms of cocaine, the district court sentenced him to a term of 360 months' imprisonment on Counts 1 and 2 to be served concurrently. Without a jury finding beyond a reasonable doubt that his offenses involved the minimum amounts of cocaine required by § 841(b)(1)(A) and § 841(b)(1)(B), Lopez should have been sentenced under § 841(b)(1)(C), which sets forth the penalties for offenses that do not specify a quantity of drugs involved. *See United States v. Ramirez*, 242 F.3d 348, 352 (6th Cir. 2001). The maximum penalty under § 841(b)(1)(C) is twenty years. Lopez's

sentence of 360 months exceeds the twenty-year maximum penalty under § 841(b)(1)(C) and thus violates *Apprendi*.

The *Apprendi* violation, however, constitutes harmless error. In *United States v. Page*, 232 F.3d 536 (6th Cir. 2000), the defendants were convicted not only of conspiracy but also of one or more counts of distribution and/or possession with intent to distribute, each of which carries a statutory maximum penalty of twenty years under § 841(b)(1)(C). The court stated that

> the total statutory maximum is dramatically increased depending on the number of counts of which each defendant was convicted. The government argues that there would be no change in defendants' sentences if remanded for resentencing. Rather than running the sentences concurrently, the Sentencing Guidelines would require that the sentence imposed on one or more of the substantive counts run consecutive to the sentence on the conspiracy count, to the extent necessary to produce a combined sentence equal to the total punishment.

*Page*, 232 F.3d at 544; *see also* USSG § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."). Reviewing for plain error, the court found that the defendants "were not prejudiced and that the fairness of the proceedings was not affected by the error since, absent the error, their sentences would have been the same as those which were imposed." *Page*, 232 F.3d at 545.

Like the defendants in *Page*, Lopez was convicted of one count of conspiracy as well as one count of distribution. If Lopez were resentenced properly in light of *Apprendi*, the sentences for each count, both of which carry a statutory maximum of twenty years, would run consecutively until reaching 360 months (240 months on the conspiracy count and 120 months on the distribution count), within the

combined statutory maximum of forty years. Therefore, Lopez was not prejudiced by the *Apprendi* violation, and the error was harmless. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

**2. Souza**

Due to the amount of cocaine involved and his two prior felony drug convictions, the district court sentenced Souza to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). Therefore, the *Apprendi* error did affect Sousa's substantial rights. Nevertheless, like the defendant in *Cotton*, the error here did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. The statute under which he was sentenced, 21 U.S.C. § 841(b)(1)(A), governs offenses involving five kilograms or more of cocaine. The evidence against him with regard to drug quantity was overwhelming, and, at least as to ten kilograms of cocaine, uncontested. At the sentencing hearing, his counsel argued that the quantity with which Sousa had been involved was substantially less than the total included in the conspiracy, and that the quantity attributable to Sousa was "only about ten kilograms." Therefore, his sentence will be affirmed under the authority of *Cotton*.

**B. Motion to Sever**

Lopez also argues that the district court erred in denying his pre-trial motion to sever his trial from Souza's trial. The denial of a motion to sever is reviewed for abuse of discretion. *United States v. Anderson*, 89 F.3d 1306, 1312 (6th Cir. 1996). Since Lopez failed to renew his motion to sever at the close of evidence, we can reverse only upon a showing of plain error. *Id.*

As a general rule, persons jointly indicted should be tried together because "there is almost always common evidence against the joined defendants that allows for the economy of a single trial." *United States v. Phibbs*, 999 F.2d 1053, 1067 (6th Cir. 1993). Severance should be granted "only if there is